In the
# United States Court of Appeals
## For the Seventh Circuit

———————————

No. 21-3059

IN THE MATTER OF:

ANTONIO TERRELL and ANGEL MARIE TERRELL,

*Debtors*.

APPEAL OF:

WISCONSIN DEPARTMENT OF CHILDREN AND FAMILIES

———————————

Appeal from the United States Bankruptcy Court
for the Eastern District of Wisconsin.
No. 18-28674-gmh — **G. Michael Halfenger**, *Chief Bankruptcy Judge*.

———————————

ARGUED MAY 24, 2022 — DECIDED JULY 12, 2022

———————————

Before EASTERBROOK, WOOD, and BRENNAN, *Circuit Judges*.

EASTERBROOK, *Circuit Judge*. We authorized immediate review of a bankruptcy court's decision, 28 U.S.C. §158(d)(2), to decide whether a confirmed Chapter 13 plan may be modified. The State of Wisconsin, which was listed in Antonio and Angel Marie Terrell's plan as a priority creditor, contends that modification is forbidden. But the bankruptcy judge ruled otherwise and modified the plan to eliminate the state's preference, which also shortened the plan's duration from 60 to

36 months. 633 B.R. 872 (Bankr. E.D. Wis. 2021). Wisconsin wants us to restore the 24 months of payments and its preferred place in line.

After filing for bankruptcy, the Terrells proposed a plan that classified about $30,000 owed to Wisconsin as a priority debt under 11 U.S.C. §507(a)(1)(B), which gives that status to "claims for domestic support obligations … owed directly to or recoverable by a governmental unit". Wisconsin had overpaid the Terrells for public assistance; they classified this obligation as one entitled to priority under §507(a)(1)(B).

The existence of a priority debt meant that payments under the plan had to continue for 60 months, after which any unpaid remainder of the debt would be discharged. 11 U.S.C. §1322(a)(4). Initially the Terrells did not expect to pay much to Wisconsin, because secured loans and back taxes had higher priority. But five months into the confirmed plan the Terrells surrendered their car and no longer needed to pay that secured loan. This freed up enough money to pay other debts, including some of what they owe to Wisconsin. The change affected which creditors would receive payments but not how much the Terrells had to pay in total, and they did not then ask for any modification in the confirmed plan beyond what was necessary to stop paying the auto lender.

The Terrells' plan was confirmed in February 2019. In June 2019 this court held that excess public-assistance payments are not entitled to priority status under §507(a)(1)(B). *In re Dennis*, 927 F.3d 1015 (7th Cir. 2019). The ruling in *Dennis* raised the possibility that the Terrells' plan could be cut from 60 to 36 months, which would reduce their total payments. They did not seek the benefit of *Dennis*, however, until December 2020, when they filed a motion objecting to

Wisconsin's claim. The bankruptcy judge sensibly treated the Terrells' motion not as an objection to the state's claim (the Terrells do not deny owing the money) but as a proposal to amend the confirmed plan to eliminate the debt's priority and cut the length of payments to 36 months. This motion, so understood, was granted over the state's objection.

Wisconsin's principal argument rests on 11 U.S.C. §1327(a): "The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." If the plan binds the debtor, Wisconsin insists, then it must be immutable. That's a non-sequitur. It would be better to say that the plan binds the debtor *unless modified*.

All judgments are binding. For example, no matter how erroneous or unfounded, an injunction must be obeyed unless stayed, modified, or reversed on appeal. See, e.g., *Pasadena City Board of Education v. Spangler*, 427 U.S. 424, 439 (1976) (discussing the collateral-bar rule in equity practice). Still, an injunction may be modified under Fed. R. Civ. P. 60(b)(5). See *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367 (1992). And that's the sense in which a confirmed plan is binding under §1327(a). It cannot be collaterally attacked, see *Adair v. Sherman*, 230 F.3d 890, 894 (7th Cir. 2000), and must be obeyed, but like other kinds of judicial orders it may be revisited and changed through authorized means.

Section 1330 of the Bankruptcy Code, 11 U.S.C. §1330(a), does not help Wisconsin. This subsection reads: "On request of a party in interest at any time within 180 days after the date of the entry of an order of confirmation under section 1325 of this title, and after notice and a hearing, the court may revoke

such order if such order was procured by fraud." The state relies on *In re Fesq*, 153 F.3d 113 (3d Cir. 1998), which holds that, by specifying that a plan may be revoked for fraud, §1330 forbids revocation on any other ground, even one allowed by the Bankruptcy Rules. That may be right, though we need not decide. No matter, because the bankruptcy judge did not revoke the Terrells' plan.

Neither §1327(a) nor §1330(a) forbids modification. But what *authorizes* modification? There was a common-law rule that a court could modify any judgment within the term during which it had been rendered, see, e.g., *Bronson v. Schulten*, 104 U.S. 410, 415 (1881), but terms of court were abolished, for most purposes, long ago. In modern practice all modifications need authorization, such as Fed. R. Civ. P. 50, 59, and 60, or Fed. R. Crim. P. 35 and 36. Those sources of authority come with time limits so that judgments are not subject to indefinite reargument and revision. Finality has substantial benefits.

The bankruptcy court considered the possibility that 11 U.S.C. §1329 supplies the necessary power. But it did not rely on §1329, and for good reason. That section includes a lengthy list of authorized changes, but eliminating the priority of a claim that the debtor has itself earlier acknowledged is not among the sorts of changes covered by §1329. Authority must come from elsewhere.

The bankruptcy court never pinned down the source of its authority to reduce the priority of Wisconsin's debt and shorten the plan. Instead it wrote that modifications are made all the time. Many a plan is proposed and confirmed before all creditors have filed their claims. Once a post-confirmation claim is filed, the debtor may object, and the court will determine the validity and amount of the debt. This speeds up both

payments to creditors and discharge of debtors (the 36 or 60 months will lapse sooner), to everyone's benefit.

Yet an observation that something is done frequently does not explain why it may be done *properly*. To infer authority from the existence of some practice is circular. Jaywalking and littering are common but not legally authorized.

One possible answer to the "why" question is that the sort of modifications the bankruptcy court mentioned are authorized by the parties' unanimous consent, express or implied. Doctrines such as law of the case or judicial estoppel, see *In re Hovis*, 356 F.3d 820 (7th Cir. 2004), may be waived or forfeited, as may rules such as claim or issue preclusion. Time limits on judicial action likewise may be waived or forfeited. (There is an exception for jurisdictional limits, but no one contends that any jurisdictional doctrine forbids the modification of a Chapter 13 plan.) The problem with relying on consent, however, is that Wisconsin didn't. It objected in the bankruptcy court to any modification of its priority.

Section 1329 and consent do not exhaust the possibilities for authorized change. We have mentioned Civil Rule 60, which applies in bankruptcy:

> Rule 60 F.R.Civ.P. applies in cases under the Code except that (1) a motion to reopen a case under the Code or for the reconsideration of an order allowing or disallowing a claim against the estate entered without a contest is not subject to the one year limitation prescribed in Rule 60(c), (2) a complaint to revoke a discharge in a chapter 7 liquidation case may be filed only within the time allowed by §727(e) of the Code, and (3) a complaint to revoke an order confirming a plan may be filed only within the time allowed by §1144, §1230, or §1330. In some circumstances, Rule 8008 governs post-judgment motion practice after an appeal has been docketed and is pending.

Fed. R. Bankr. P. 9024. And one part of Rule 60 seems addressed directly to the Terrells' situation. Rule 60(b)(1) permits relief from a judgment that was attributable to "mistake, inadvertence, surprise, or excusable neglect". The "mistake" underlying the Terrells' original plan was their assumption, shared by the bankruptcy court, that a state's effort to recoup overpaid public benefits is entitled to priority under §507(a)(1)(B). *Dennis*, decided four months later, holds otherwise, so the assumption turned out to have been a mistake.

Until recently the courts of appeals disagreed about whether Rule 60(b)(1) refers to legal mistakes, factual mistakes, or some mixture of these. *Kemp v. United States*, 142 S. Ct. 1856 (2022), holds that it includes all kinds of mistakes. But this is not the blessing the Terrells need, for Rule 60(c) sets a one-year time limit on relief under Rule 60(b)(1), and *Kemp* holds that this time limit precludes the possibility of relief under the subsections of Rule 60 that lack an outer time for modification. The Terrells could have sought timely relief under Rule 60(b)(1)—when *Dennis* was decided, that year had more than seven months left to go—but they did not. They took almost two years from the plan's confirmation and more than 16 months from the earlier modification to reflect the elimination of the auto loan.

Bankruptcy Rule 9024(1) says that the time limits in Civil Rule 60(c) do not apply to "a motion to reopen a case under the Code or for the reconsideration of an order allowing or disallowing a claim against the estate entered without a contest". Neither of these provisos helps the Terrells. They did not ask the bankruptcy court to reopen their case, nor did they seek reconsideration of an order allowing a claim without a

contest. The Terrells themselves proposed Wisconsin's debt as a priority claim; it was not approved behind their backs.

Justice Sotomayor filed a concurring opinion in *Kemp* suggesting that a legal error might be fixed under Rule 60(b)(6), the residual category that may be invoked within any reasonable time, if a change of law has produced "extraordinary circumstances". She pointed to *Buck v. Davis*, 137 S. Ct. 759, 777–80 (2017), and *Gonzalez v. Crosby*, 545 U.S. 524, 531 (2005), as examples. (The "extraordinary circumstances" threshold appears in *Gonzalez* and was repeated in *Buck*.) It is not clear that these decisions, which did not mention Rule 60(b)(1) or Rule 60(c), survived *Kemp*—the majority neither endorsed nor critiqued Justice Sotomayor's statement—but, even if they did, they do not help the Terrells. *Dennis* did not change the law of the Seventh Circuit. Rather, it considered and resolved an issue of first impression. There's nothing extraordinary about such a decision, nor is there a norm in civil litigation that old judgments be reopened to take account of new appellate decisions. *Gonzalez* itself said that this should not be done routinely. See also, e.g., *Federated Department Stores, Inc. v. Moitie*, 452 U.S. 394 (1981). That's not all. Rule 60(c) tells us that motions under the Rule 60(b)(6) catch-all must be made within a reasonable time. It is hard to see the time the Terrells took after *Dennis*, more than 17 months, as reasonable.

We imagine that much of this discussion will be a surprise to the bankruptcy judge, for neither the Terrells nor the state mentioned Rule 9024 in that court. The judge did not discuss it either. The parties' appellate briefs were equally silent. Counsel for both sides seemed startled when we raised the subject at oral argument. But then none of the lawyers was aware that *Kemp* was pending in the Supreme Court. Because

the time limits in Rule 60(c) are subject to waiver and forfeiture—they have this in common with other time limits in procedural rules, see *Hamer v. Neighborhood Housing Services of Chicago*, 138 S. Ct. 13 (2017)—we have considered whether Wisconsin forfeited its rights by not drawing Rule 60(c) to the bankruptcy judge's attention. The answer is no. A litigant does not forfeit rights by remaining silent about a topic to which its adversary and the judge never adverted. The Terrells had the burden of providing reasons, including legal authority, for their motion. They did not rely on Rule 9024, so the state did not have to respond. Once we raised the topic, however, Wisconsin invoked the benefit of *Kemp* and the time limit in Rule 60(c).

To recap: A bankruptcy court needs authority from a statute, rule, or the litigants' consent to modify a confirmed plan of reorganization. Modification is possible in principle, but the Terrells acted too late to use Rule 60(b), the best if not the only source of authority for the relief they were seeking. The decision of the bankruptcy court therefore is

REVERSED.